UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
: C/M
:
LESLIE E. BROWN, : **MEMORANDUM**
: **DECISION AND ORDER**
Plaintiff, :
: 15 Civ. 6215 (BMC) (LB)
- against - :
:
DETECTIVE JOHN RUSSO, Tax Reg. :
#880293, :
:
Defendant. :
------------------------------------------------------------ X

**COGAN**, District Judge.

Plaintiff is a serial *pro se* litigant who brings this action for false arrest and related claims pursuant to 42 U.S.C. § 1983. It may be a case of mistaken identity, in that if plaintiff did not commit the crime that the detective was investigating, video evidence of the crime showed that he looked an awful lot like the person who did. Plaintiff also lived right near the scene of the crime, and an uninvolved officer who had arrested him for a prior crime also recognized him in the video. Based on this evidence, plaintiff was not only arrested, but a Grand Jury indicted him. I find that there was either probable cause for his arrest, or that, at the very least, this suit against the arresting officer cannot be maintained on the ground of qualified immunity. Therefore, defendant's motion for summary judgment is granted.

## BACKGROUND

The facts are taken from defendant's Local Rule 56.1 statement, as plaintiff has not filed an opposing statement. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (finding "that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law" (internal quotation marks omitted)); Wali v. One Source Co.,

678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("*Pro se* litigants are then not excused from meeting the requirements of Local Rule 56.1."). Further, my review of the record shows that there were no contradictions between defendant's statement and the evidence defendant submitted in support. See, e.g., Smith v. City of New York, No. 12-CV-4892, 2014 WL 5324323, at *1 n.1 (S.D.N.Y. Oct. 20, 2014). Moreover, I reviewed the documentary evidence that plaintiff attached to his opposition, and none of the submissions contradict defendant's 56.1 statement; rather, the evidence supports defendant's statement, as well.[1]

According to the undisputed facts, an individual named Samara Williams came home one evening to find her apartment in Queens had been robbed. Defendant Detective Russo interviewed her the same day and learned that her front window screen had been ripped open, making it the likely point of entry, and that the burglar had taken a television set and a gold watch. Det. Russo then interviewed the landlord, who gave Det. Russo video footage clearly showing the crime and the perpetrator (he is seen entering and then leaving the building carrying a television set), which is part of my record. The perpetrator as shown in the video is a tall, bald, clean shaven, dark-skinned, African-American male.

Four days later, Det. Russo observed plaintiff a block away from the scene of the burglary. Plaintiff is 6'4" tall, 200 lbs., and is a dark-skinned, clean shaven, bald, African-American male. Det. Russo approached him and spoke to him for about 15 minutes. Plaintiff

---

[1] I did not consider, however, the self-serving statements that plaintiff made in his opposition that contradict his sworn deposition testimony. See, e.g., Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Crawford v. N.Y. Life Ins. Co., No. 04 CV 1853, 2006 WL 2792779, at *5 (E.D.N.Y. Sept. 27, 2006) (rejecting *pro se* plaintiff's affidavit as "self-serving and contradicted by her previous deposition testimony"). For example, in his opposition, plaintiff alleges that Detective Russo confiscated his identification, that he stalked plaintiff, and that he stopped and frisked plaintiff; however, those allegations were not shared during his deposition. In fact, in his deposition, he testified that Det. Russo "demanded" his identification and then returned it and talked to him for 15 minutes. Although plaintiff testified that Det. Russo was "intimidating" several times, he never once mentioned a stop-and-frisk or stalking when asked about further interactions with Det. Russo. More than that, Det. Russo's interactions with plaintiff on a day when he did not arrest plaintiff, when Det. Russo was merely investigating, does not give rise to any material factual disputes as they relate to the determination that there was probable cause to arrest plaintiff, which came ten days later.

showed or gave Det. Russo identification and told Det. Russo that he resided at an address that was nearby.

After speaking with plaintiff, Det. Russo returned to his precinct and ran plaintiff's arrest history, learning that plaintiff had been previously arrested by one Officer Gargano. He showed Officer Gargano still frames from the video of the burglary and asked him if the individual in the stills looked like plaintiff. Officer Gargano confirmed that plaintiff did indeed look like the individual depicted in the stills. Det. Russo arrested plaintiff for the burglary about ten days later. A Grand Jury indicted plaintiff for the burglary less than a week after that.

Sometime later, between several weeks to two months after that (the record is unclear), Det. Russo advised the assistant district attorney ("ADA") who was prosecuting plaintiff that he had arrested another individual named Shahim Ivery for a burglary at another location, far from the Williams burglary. However, Ivery, like plaintiff, also lived near Williams. Det. Russo thought that Ivery also looked like the perpetrator depicted in the video, and he so advised the ADA. The ADA concluded, in a memo to his superiors that plaintiff attached to his opposition, that "[t]heir likeness in their similarity is striking and when comparing the mug shots to the video surveillance it is difficult to say who may be in the video." The ADA noted that plaintiff had passed a polygraph, and he therefore recommended dismissal, which occurred at the next court appearance, about three and one half months after plaintiff's arrest.

## DISCUSSION

In reviewing a motion for summary judgment, the court is to "constru[e] all evidence in the light most favorable to the non-moving party." Ruggiero v. Cty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006). The motion should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

3

R. Civ. P. 56(a). A dispute is not "genuine" if no reasonable jury "could return a verdict for the nonmoving party." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).

Under New York law, a plaintiff claiming false arrest must establish that (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (quoting Broughton v. New York, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (1975)). A § 1983 claim for false arrest requires "substantially the same" test. Id.[2] There is no dispute that Det. Russo intended to confine plaintiff, that plaintiff was conscious of the confinement, and that plaintiff did not consent to the confinement. Therefore, the legal issue is whether plaintiff's arrest was "privileged."

The test for whether an arrest is privileged is straightforward: An arrest is privileged if it is supported by probable cause. See Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (holding that "probable cause to arrest constitutes justification and is a complete defense to an action for false arrest") (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013). The test is an objective one; an officer's subjective belief at the time of the arrest is irrelevant. Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000). Even when probable cause is based on mistaken information,

---

[2] Plaintiff initially asserted claims for false arrest and false imprisonment separately, but he does not dispute that the claims can be treated interchangeably. See, e.g., Gaston v. City of New York, 851 F. Supp. 2d 780, 786 (S.D.N.Y. 2012) ("[F]alse arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion.").

4

probable cause can still exist so long as the arresting officer acted reasonably and in good faith in relying on the information. Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

At one level, is it tempting to find a factual issue and let a jury determine whether Det. Russo acted reasonably in concluding that plaintiff was the person depicted in the video. However, having reviewed the video and plaintiff's arrest photographs, I see no way that I could allow a verdict in plaintiff's favor to stand because no reasonable jury could find that Det. Russo acted unreasonably in reaching his conclusion because, as the ADA concluded, the appearance of plaintiff and the perpetrator are strikingly similar. It must be remembered that this is not a case of Det. Russo arresting plaintiff merely on the basis that he matched a narrative description of the burglar given by a victim, as is often the case. See Dancy v. McGinley, No. 15-140-CV(L), 2016 WL 7118403, at *10 (2d Cir. Dec. 7, 2016). Here, instead, Det. Russo had a video of the burglary, and he saw plaintiff face-to-face.

Moreover, he obtained the concurrence of Officer Gargano, who also had interacted with plaintiff personally from having previously arrested him and who also saw still frames from the video. Further, plaintiff lived very near to where the burglary occurred. The combination of plaintiff's striking similarity to the person in the video, his residential proximity to the burglary location, his prior arrest record, and the fact that an uninvolved police officer who had arrested him previously also thought he was depicted in the video was sufficient reason for Det. Russo to believe that he had identified the individual who committed the burglary.

This is further confirmed by the Grand Jury's indictment of plaintiff. It is axiomatic that indictment by a Grand Jury creates a presumption of probable cause, see, e.g., Savino v. City of New York, 331 F.3d 63, 68 (2d Cir. 2003), and plaintiff has offered no facts to rebut that presumption.

Finally, as to the false arrest claim, even if there were no probable cause, Det. Russo is entitled to qualified immunity. "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff," which is the case "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

The qualified immunity doctrine "provides a broad shield." Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013). It gives an arresting officer "breathing room to make reasonable but mistaken judgments" without fear of liability. Id. (quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012)). Qualified immunity is "a deliberately forgiving standard of review that provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Id. (internal quotations and citation omitted). Qualified immunity is available if an officer's conduct "does not violate clearly established constitutional rights of which a reasonable person would have been aware." Id. at 388 (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011)).

Here, plaintiff's physical similarity to the person in the video is so striking that if it is not him, it is clear that Det. Russo made nothing more than an understandable mistake. This is further confirmed by (a) Det. Russo's decision not to arrest plaintiff based solely on the video, but to investigate his background and, on learning of his prior arrest, to obtain the opinion of Officer Gargano as to whether it was plaintiff who was depicted in the video; and (b) the fact that it was Det. Russo who called the arrest of Ivery to the ADA's attention. These steps confirm that Det. Russo was acting reasonably and is therefore entitled to qualified immunity.

Regarding plaintiff's myriad other claims, his complaint begins by listing a series of claims by name, in addition to false arrest, including, *inter alia*, abuse of process and malicious prosecution. The dismissal of his false arrest claim disposes of these claims, as well. Abuse of process requires a showing of malice, see, e.g., Savino, 331 F.3d at 76, and for the same reason that Det. Russo is entitled to qualified immunity, there is an absence of any evidence indicating malice (in fact, quite the contrary). Similarly, his malicious prosecution claim fails for the same reason and also because the existence of probable cause bars his claim for malicious prosecution. See id. at 72; cf. Kafanu v. Burrows, No. 07-cv-1520, 2009 WL 1457153 (D. Conn. May 21, 2009) (where witnesses identified plaintiff in a video, the individual in the video resembled plaintiff, and the state prosecutor noted the physical similarities between plaintiff and the individual in the video, "no reasonable juror could find that Defendants' identification amounted to procurement of criminal proceedings.").

Finally, plaintiff's list of claims includes various common law torts. Under most circumstances, I would dismiss these without prejudice to pursuit in state court. See 28 U.S.C. § 1367. However, dismissal with prejudice is appropriate here for two reasons. First, many of his common law claims precisely overlap with the federal claims that he has asserted under 42 U.S.C. § 1983, and there is no reason to expose either side to the burden of continued litigation over those claims. In addition, plaintiff acknowledged in his deposition that he failed to file a notice of claim with the City of New York, as would be required to pursue any of these claims, and thus it is clear that he has no right to pursue them under state law.

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment, dismissing the complaint. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

$\overline{\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}}$
U.S.D.J.

Dated: Brooklyn, New York
December 21, 2016